## GEORGE F. DRISCOLL CO. v. UNITED STATES.

### No. 45455.

Court of Claims.

Oct. 1, 1945.

WHITAKER and MADDEN, Judges, dissenting.

of Washington, D. C., on the brief), for plaintiff.

William A. Stern, II, of Washington, D. C., and Francis M. Shea, Asst. Atty. Gen., for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES and MADDEN, Judges.

LITTLETON, Judge.

Plaintiff and defendant entered into a contract for the erection by plaintiff of certain buildings on Ellis Island. One building was to be erected upon piles. The provision of the specifications relating to driving of the piles is set forth in finding 4. It provides that "All piles shall be driven in the presence of the construction engineer." The contract drawings furnished by defendant designated the places at which these piles were to be driven. After plaintiff had driven certain piles in accordance with the drawings and was ready to drive another, it discovered that, if driven at the place designated on the drawings, this pile would probably strike an 8-inch underground water main which supplied the Island with water.

Defendant had a construction engineer, Paul H. Heimer, in charge of the work as the representative of the contracting officer. The contracting officer was the Director of Procurement of the Treasury Department. The construction engineer had an assistant, R. S. Eyres, in charge of the work at the site. Plaintiff called the attention of the construction engineer to the fact that if the next pile should be driven as shown on the drawings it might strike the underground water main. Thereupon a conference was held, at which plaintiff's construction engineer and its superintendent and the defendant's construction engineer and his assistant construction engineer were present, the results of which are set forth in findings 9 to 14, inclusive.

After probing for the water main, as stated in the findings, at a point indicated by the construction engineer, but different from the point at which the drawings showed this pile should be driven, plaintiff, with the approval of the assistant construction engineer in charge of the work, drove the pile at that point. When the pile was so driven it struck the water main and broke it. The break in the water main was not at once apparent. By the next morning, May 2, there was no water sup-

Joseph J. Cotter, of Washington, D. C. (Arthur J. Phelan and Hogan & Harston,

ply and many Government buildings on Ellis Island were in urgent need of water; the supply in their tanks would last only a short time. The construction engineer ordered plaintiff to make necessary repairs to the water main. Plaintiff at once, in view of the emergency situation and the orders of defendant's construction engineer, set to work to repair the break as quickly as possible and, also, under like orders, made arrangements to haul water by tugboats to Ellis Island; in addition it procured over one thousand feet of fire hose, extending it from the Island, under the water, to a point on the New Jersey shore, where connection was made to a water main. In this manner water was supplied to Ellis Island until the broken main had been repaired. It required approximately one week, working 24 hours a day, to repair the broken main. Plaintiff at all times denied responsibility for the breaking of the water main and, on May 3, plaintiff made claim, as set forth in finding 13, for reimbursement of all costs of repairs made necessary by the break in the water main. On May 11, the construction engineer, as set forth in finding 13, denied its claim for reimbursement, and confirmed the directions previously given to plaintiff to furnish water and repair damage to the water main.

On June 5, after this work had been completed, plaintiff submitted to the contracting officer an itemized claim for the costs incurred and this claim was denied by the contracting officer, from which no appeal was taken by plaintiff to the head of the Department.

Article 15 of the contract, quoted in finding 15, made the decision of the contracting officer, subject to appeal to the head of the Department, final and conclusive as to "All disputes concerning questions arising under this contract."

The contracting officer upon consideration of plaintiff's claims of May 3 and June 5 and all the facts submitted by plaintiff, and those obtained as a result of his own investigation, decided that plaintiff, and not the Government, was responsible for locating the water main before driving the pile which resulted in its being broken, and that under all the facts and circumstances plaintiff was responsible for the cost of making necessary repairs and for furnishing the Government with fresh water until the repairs had been completed.

Plaintiff does not claim and has submitted no proof to show that the decision of the contracting officer was so grossly erroneous as to imply bad faith, and it is clear that such a claim could not be made. Plaintiff argues that the contracting officer's decision was conclusive only as to matters of fact and that the decision which was made consisted merely of conclusions of law. It is contended that the decision was not final as to matters of law relating to the interpretation of the contract. Under article 15 this contention cannot be sustained. The decision of the contracting officer consisted of a decision on matters of fact, as well as matters relating to the proper interpretation of the contract, drawings, and specifications, and his authority to decide the dispute included both questions.

We think the claim which plaintiff made to the contracting officer, and which it makes here, involves a dispute which arose under the contract which the contracting officer was not only authorized but was required to decide under the provisions of article 15. Except for this, plaintiff would be entitled under the findings to recover $7,787.12, as set forth in findings 16 and 17. However, we are of the opinion that the decision of the contracting officer, from which plaintiff took no appeal, was final.

The contracting officer under the contract provisions and on the facts, as he interpreted them, decided the dispute against plaintiff and, even if the decision had been grossly erroneous, we could not set it aside unless we were justified from the evidence in finding that it was so grossly erroneous as to imply bad faith. Plaintiff submitted a claim and complete statement of facts and argument in support thereof. The contracting officer secured a report from the construction engineer, after which he had a further investigation made of the facts and circumstances by holding a hearing with plaintiff on its claim at the site of the work, and, subsequently, appointed a committee to consider and make recommendation upon the claim before he rendered his decision. Upon the record thus made he honestly and in good faith reached the conclusion that upon the facts and under the terms and conditions of the contract the plaintiff, rather than the Government, was responsible for the break in the water main and for the cost of repair-

ing the damage thereto. In his decision sent to plaintiff he stated as follows:

"* * *. Supplementing your proposal of June 5, wherein you submitted statement for $8,474.00 for this work, on July 17, you submitted further information and asked favorable consideration for reimbursement.

"Subsequent to the conference between the representatives of this Office and yourself at the site, the committee of Government representatives reviewed the terms of your contract in the light of the evidence presented and finds the responsibility for the additional expense, which was incurred by you in the repair of this broken water main, is for your assumption, and your proposal that the Government compensate you therefore is hereby rejected."

The petition must therefore be dismissed. It is so ordered.

WHALEY, Chief Justice, concurs.

JONES, Judge (concurring).

I concur in the result on the ground that plaintiff was at fault in not driving a rod or otherwise exploring to the full depth that it intended ultimately to drive the pile. It knew the water main was in that area and, in view of the obligations of the contract, should have exercised this precaution.

WHITAKER, Judge (dissenting).

The majority say that plaintiff would be entitled to recover the sum of $7,787.12, except for the adverse ruling of the contracting officer and plaintiff's failure to appeal therefrom. I think it is entitled to recover this amount and I do not think the ruling of the contracting officer bars it from doing so.

The work of repairing this broken main was not a part of the contract and, hence, is not governed by its terms. The provisions of article 15 have no application to the dispute as to who should pay for the cost of repairing it. This article gave to the contracting officer authority to decide only those disputes that arose under the contract. This work was not a part of the contract and, therefore, the dispute over who should pay for it does not arise under the contract.

The most that can be said is that this work was made necessary by the manner in which the contract was carried out. If the plaintiff was negligent in its performance and thereby broke the main and made

necessary this work, it should pay for it; on the other hand, if the defendant was responsible for its breakage, then it should pay for the cost of its repair. This is a dispute over whether the plaintiff or the contracting officer was responsible for an act that caused damage to defendant's property. I do not think the parties intended to leave to the contracting officer the settlement of such a dispute.

It is almost impossible for a party charged with wrongdoing to be wholly impartial in deciding whether or not it or the other party was guilty of the wrong. The breaking of this main was the fault of either the contracting officer or of the plaintiff. The contracting officer would be a most unusual man if he could decide, wholly without bias, whether he or the plaintiff was at fault. I do not think the plaintiff intended to give him such authority.

The Act of Congress, Jud.Code § 136 et seq., 28 U.S.C.A. § 241 et seq., establishing this court gave the plaintiff the right to come to it for a settlement of such a dispute. I cannot believe that when it agreed to article 15 of the contract the plaintiff meant to forego this right and give to the other party final and conclusive authority to decide such a dispute.

I do not believe the defendant intended to ask it to forego this right; nor do I believe that it had a right to do so. Can it be that an agent of the executive branch of the Government has a right to take away from a plaintiff a right given him by Congress? Has he the right to say, we will award you this contract only if you agree to forego this right Congress has given you of resorting to the Court of Claims for a redress of your grievances?

In Beuttas et al. v. United States, 101 Ct. Cl. 748, the issue was whether or not the defendant had paid plaintiffs all it had agreed to pay under the contract. The contracting officer decided it had. This was said to be final and conclusive. A majority of the court held that it was not. We said, upon the authority of a number of cases there cited, that an agreement made in advance of the controversy that deprived a party of recourse to a court having jurisdiction of the controversy, over whether or not the defendant had breached its contract by not paying all it had agreed to pay, is contrary to public policy and void. See 101 Ct.Cl. at pages 767–770. The decision of the majority in the instant case is, I think,

in direct contradiction to our holding in the Beuttas case. If the decision of the majority in that case was right, it is wrong in this. Also compare Langevin v. United States, 100 Ct.Cl. 15.

I do not believe the contracting officer had the right to decide the dispute over whether he or the plaintiff was responsible for breaking this main. In my opinion his decision does not foreclose the plaintiff and it is entitled to recover.

MADDEN, Judge (dissenting).

I agree that the plaintiff should recover. The determining fact, in my view, is that the pile was driven with the concurrence of both parties. If, in view of the probing that had been done, the driving of the pile was not a careless act, then the plaintiff was not careless, and the loss was due to an accident. If, on the other hand, it was careless conduct to drive the pile where it was driven, the Government, through its Assistant Superintendent of Construction, joined in the conduct, and could not have sued the plaintiff for the consequences of that conduct. At that point, then, the loss lay on the Government. When it ordered the plaintiff to repair the damage, it ordered it to do something which the plaintiff was under no duty to do. The Government should, therefore, pay for the doing of it.

It is urged that the contracting officer's decision adverse to the plaintiff prevents any recovery here, under Article 15 of the contract. The issues between the parties should have been whether the plaintiff's breaking of the Government's water pipe was negligent, i.e., tortious and, if so, whether the concurrence of the Government's agent in the plaintiff's conduct was such as to prevent the Government from recovering its loss from the plaintiff. These issues, in a trial, might be left to a jury, but only after the jury had been carefully instructed by a judge as to the standards of conduct required by the law before it imposed a liability or sanctioned a defense. There is no indication in the record that the contracting officer ever thought of these issues, or was competent to resolve them if he had thought of them. Instead he read the contract literally, concluded that it required the plaintiff to keep the water running through the pipe, and therefore decided that the plaintiff had not done more than was required of it by the contract when it repaired the break in the pipe. It is said that he applied himself earnestly and diligently to the resolution of the dispute, but that hardly makes up for the fact that he did not know what the issue was.

I agree that this is not a "dispute concerning a question arising under this contract" within the meaning of article 15. The contract provision concerning the maintenance of the water service had nothing to do with the question. Only the fact that the plaintiff, when it broke the Government's pipe, was engaged in the performance of a contract, created any appearance of a relation between the breaking and the contract. To so interpret article 15 as to encompass this dispute seems to me to stretch it beyond its expressed intent, and far beyond any actual intent which could reasonably be imputed to the contracting parties. It is orthodox doctrine that arbitrators may make decisions only within the authority granted them in the agreement to arbitrate, and that the question whether a subject matter is within their authority is not for the arbitrators to decide, but for the court, even though the arbitration agreement purports to cover "all disputes." B. Fernandez & Hnos., S. En C., v. Rickert Rice Mills, Inc., 1 Cir., 119 F.2d 809, 136 A.L.R. 351, with annotation on the construction of arbitration contracts; Williston on Contracts, § 1929. Where, as in Government contracts, the nonjudicial decision is to be made, not by a board of neutral persons, but by an agent of one of the contracting parties, the rule of construction should be at least as strict as in arbitration cases.

I think, therefore, that we have authority to decide whether the dispute which arose here was, under the contract, one for the decision of the contracting officer. I agree that it was not. On the merits I would, for the reasons I have given, decide the dispute for the plaintiff.